## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|                           |   |                        |
|---------------------------|---|------------------------|
| RAY TEDESCHI              | : |                        |
|        Plaintiff,         | : |                        |
| v.                        | : | No. 3:10CV00612 (DJS)  |
| KASON CREDIT CORPORATION  | : |                        |
|        Defendant.         | : |                        |

## MEMORANDUM OF DECISION AND ORDER

The plaintiff, Ray Tedeschi, brings this action against the defendant, Kason Credit Corp. ("KCC")[1], alleging that KCC made excessive and harassing debt collection calls to Tedeschi. It is brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.[2] The complaint also includes state law claims of invasion of privacy by intrusion upon seclusion, and intentional infliction of emotional distress.[3]

KCC has filed a motion for summary judgment arguing that Tedeschi lacks standing under the FDCPA, that his claim under the FDCPA is barred by the statute of limitations, and that the

---

[1] The complaint also named "Does 1-10," who were identified as "individual collectors employed by Kason and whose identities are currently unknown to the Plaintiff. One or more of the Collectors may be joined as parties once their identities are disclosed through discovery." Although the identities of two collectors were disclosed through discovery, no additional party was joined and the case proceeds against KCC alone.

[2] Tedeschi makes specific claims under 15 U.S.C. §§ 1692d(2), 1692d(6), 1692e(10), and 1692g(a)(1)-(5).

[3] In his complaint, Tedeschi alleged violations of 15 U.S.C. § 1692c(a)(1), 15 U.S.C. § 1692g(b), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.* The Court need not discuss these claims, however, because Tedeschi notified the court that he has withdrawn these claims. (Doc. # 32-1, at 5).

alleged conduct fails as a matter of law to satisfy the requirements of the FDCPA, invasion of privacy by intrusion upon seclusion, or intentional infliction of emotional distress.  In turn, Tedeschi has filed a cross motion for summary judgment arguing that, as a matter of law, KCC's conduct satisfies the requirements of the FDCPA, invasion of privacy by intrusion upon seclusion, and intentional infliction of emotional distress.  Tedeschi further moves for sanctions against KCC in the form of an adverse inference due to spoliation of evidence.  For the reasons stated below, the defendant's motion for summary judgment is granted in part and denied in part, and the plaintiff's cross motion for summary judgment is denied.

## I. FACTS

The following facts are not in dispute.  KCC is a small company that has been in the debt collection business since 1979.  On or about September 3, 2008, the Hartford Medical Group (HMG) sent KCC an account for collection regarding an HMG patient named Amarilis Cruz ("Cruz").   The telephone number listed in the account paperwork for Cruz was 860-758-7799.

On March 28, 2009, Tedeschi moved into a new home in the Broad Brook section of Windsor Locks, Connecticut.  On the same day he was assigned a new residential telephone number, 860-758-7799.  This telephone number is the same number listed in the account paperwork provided to KCC for Cruz.

Tedeschi alleges the following facts which are supported by evidence in the record.  From March 2009 through March 2010 KCC placed approximately twenty calls to Tedeschi's home.  On several of those occasions Tedeschi spoke with a KCC representative.  Tedeschi does not recall specific dates or times when KCC placed calls to him. He does recall that he received two or three

calls within the first week of receiving the 860-758-7799 phone number and about another half dozen calls in April 2009. On occasions when Tedeschi spoke to a KCC representative, or when a KCC representative left a phone message, the calls were regarding an Amaryllis Soto or Amaryllis Cruz. On those occasions when Tedeschi spoke to a KCC representative, he informed the representative that he did not know the person KCC was asking for and that no such person resided at the location KCC was calling. On some occasions the KCC representative refused to identify herself, but Tedeschi was able to identify KCC as the caller by seeing KCC's name on his telephone caller ID. On one occasion the KCC representative informed Tedeschi that she could call any time she wanted to and  do whatever she wanted to. On another occasion Tedeschi informed a KCC representative in the morning that he didn't know the person KCC was calling about, but received a message on his telephone answering machine later that same day inquiring about the same person.

KCC alleges the following facts which are supported by evidence in the record. KCC has never attempted to collect on any debt owed by someone named Amaryllis Soto, Amaryllis Sotto, Amarilis Sotto, Amarilis Soto, or any variation therefore.  KCC placed telephone calls to Tedeschi's home in an attempt to speak to Cruz regarding her debt on only two occasions. On June 12, 2009, Jonis Diaz, a KCC collector, called the Tedeschi home and left a voicemail message identifying the caller as KCC, indicating that the message was for Amarilis Cruz, and requesting a return call to a provided phone number. On March 24, 2010, Janalis Martinez, another KCC collector, called the Tedeschi home. A man answered the phone and Martinez asked to speak to  Amarilis  Cruz. Tedeschi told her that Ms. Cruz did not live at that location. He then asked for the identity of the caller, her telephone number, and the name of the company for whom she worked. Martinez identified herself by name, informed him that she was calling on behalf of KCC, and provided her

telephone number. and extension.  KCC never sent Tedeschi any written correspondence. The way KCC's phone system is set up, the name Kason Credit Corporation, or any variant thereof, would not have appeared on Tedeshci's telephone caller ID.

## II. STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law," and an issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010).

The burden is on the moving party to show that there is no genuine issue of material fact. Anderson, 477 U.S. at 256.  In determining if a genuine issue of material fact exists, the Court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.  Id. at 255; Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010).  Even so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party must, instead, "cit[e] to particular parts of materials in the record . . . or . . . show[] that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  Therefore, Rule 56 "mandates the entry of summary judgment" against a non-moving party when the party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

On cross-motions for summary judgment, each motion must be considered "on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011).

## III. DISCUSSION

### A.   COUNT ONE- VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

#### i.   STANDING

KCC argues that Tedeschi lacks standing under the FDCPA.  Specifically, KCC argues that Tedeschi does not have standing because he is not a consumer, a party standing in the shoes of the consumer, or a party who has suffered injurious exposure.  Tedeschi responds that he has standing to bring suit under the FDCA because

> [a] lack of notice from KCC about the nature of the debt, or informing Tedeschi that all collection activity against him shall cease, combined with continued collection activity against him, subjected Tedeschi to injurious exposure in that he was forced to undergo unnecessary anxiety and agitation as a result of wondering whether KCC would finally stop calling him or whether it would continue its relentless calling campaign.

(Doc. # 32-1, at 10).  Tedeschi claims that KCC violated 15 U.S.C. §§ 1692g (a) (1)-(5)[4] by failing

to send him a  validation notice in compliance with the FDCPA.

"Except as otherwise provided by this section, any debt collector who fails to comply with

any provision of [the FDCPA] with respect to any person is liable to such person . . . ." 15 U.S.C.

§ 1692k (a).  The requirements of standing under the FDCPA vary based on the alleged violation.

While some sections require a party to be a consumer in order to have standing, other sections are

silent.  Compare 15 U.S.C. § 1692c ("communicat[ion] with a consumer . . . .") with 15 U.S.C. §

1692d ("A debt collector may not engage in any conduct the natural consequence of which is to

harass, oppress, or abuse any person in connection  with the collection of a debt."). FDCPA 15

U.S.C. § 1692g(a) states that "[w]ithin five days after the initial communication **with a consumer**

. . . a debt collector shall . . .  send **the consumer** a written notice . . . ." (emphasis added).  The

plain language of the statute requires that notice be sent to the consumer. Since a debt collector's

obligation under that section of the FDCPA runs to the consumer, a debt collector who fails to

comply with those provisions would be "liable to such person," i.e., the consumer.

The FDCPA defines a consumer as "any natural person obligated or allegedly obligated to

pay any debt." 15 U.S.C. § 1692a(3).   Here, the debt collection agency was allegedly seeking an

Amarylis Soto or Amarylis Cruz.  There is no contention that the agency asserted Tedeschi owed the

debt or was obligated to pay the debt.  Therefore, Tedeschi is not a consumer under the FDCPA. The

Court concludes that under the circumstances presented in this case, Tedeschi lacks standing to

---

[4]The FDCPA requires a debt collector to send a consumer written notice containing specific
information within five days after the debt collector's initial communication with the consumer.
15 U.S.C.  §§ 1692g (a) (1)-(5)

maintain his claims under 15 U.S.C. §§ 1692g (a) (1)-(5).[5]  For that reason, KCC's motion is granted as to those claims.

FDCPA 15 U.S.C. § 1692d provides that a debt collector may not "harass, oppress, or abuse any person in connection with the collection of a debt," and § 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." By their terms, neither of these two sections limits standing to consumers.  Therefore, a party may have standing to bring a claim if they have suffered an injury under one of those statutes. See Bank v. Pentagroup Financial, LLC, 08-CV-5293 (JG) (RML), 2009 U.S. Dist. LEXIS 47985, at *15 (E.D.N.Y. June 9, 2009) ("Due to the . . . plain language of § 1692d, . . . a plaintiff who is not a consumer may have standing to assert a claim brought pursuant to § 1692d."); see also Schwartz v. Resurgent Capital Services, LP, 08 CV 2533 (NG) (RML), 2009 U.S. Dist. LEXIS 103903, at *10-11 (E.D.N.Y. Nov. 9, 2009) ("the general 'false, deceptive, or misleading' provision of § 1692e is *not* explicitly limited to 'the consumer'").  Tedeschi's claims under each section will be discussed in greater detail below.

---

[5]The Court recognizes that the Second Circuit "has not specifically ruled as to which, if any, sections of the FDCPA are necessarily limited to consumers." Sibersky v. Goldstein, 155 F. App'x 10, 11 (2d Cir. 2005). The Court concludes, nonetheless, that these claims of Tedeschi are not within the "zone of interest" protected by the express language of 15 U.S.C. §§ 1692g (a) and (b). See Johnson v. Ocwen Loan Servicing, 374 F. App'x 868, 874 (11th Cir. 2010); see also West v. Costen, 558 F. Supp. 564, 580 (W.D.Va. 1983) (a party was not entitled to recover under §1692g (a) because "she is not a consumer under the FDCPA").

ii.   **STATUTE OF LIMITATIONS**

KCC argues that any claim Tedeschi may have under the FDCPA for the conduct alleged in his complaint is barred by the one year statute of limitations applicable to FDCPA actions. Specifically, KCC claims that "except for the one telephone conversation [Tedeschi] had with KCC collector Janalis Martinez regarding a Ms. Cruz about a year after he moved into his new home, the plaintiff cannot place any of the calls received on account of a Ms. Soto as having occurred after April 22, 2009." (Doc. # 30-1, at 15).   Tedeschi responds that his own deposition testimony is sufficient to show that he received calls within one year prior to filing his action, and, for that reason, KCC's statute of limitations argument fails.

FDCPA 15 U.S.C.§ 1692k(d) provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . .  within one year from the date on which the violation occurs."  "[T]he statute of limitations is not intended to deprive plaintiffs of the use of evidence of violations that took place more than a year before filing, but rather to protect defendants by ensuring that the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA."  Padilla v. Payco General American Credits, Inc., 161 F. Supp. 2d 264, 273 (S.D.N.Y. 2001).

Tedeschi filed his initial complaint on April 21, 2010.  Therefore, to fall within the statute of limitations the most recent alleged violation must have occurred after April 21, 2009. KCC acknowledges that it contacted Tedeschi on June 12, 2009, and on March 24, 2010. These dates fall after April 21, 2009.  The Court therefore concludes that Tedeschi's FDCPA claim is not barred by the one year statute of limitations.

iii. **15 U.S.C. §1692d**

KCC argues that there is no genuine dispute as to any material fact and that the alleged conduct fails, as a matter of law, to satisfy the requirements of the FDCPA under §§ 1692d(2) and (6).  Specifically, KCC argues that the alleged statement by a KCC collector that "we have the right to call you as much as we want" did not constitute the use of profane, obscene, or abusive language under § 1692d(2).  KCC further argues that, as it only placed two calls to Tedeschi and the caller identified herself on both occasion, KCC has not placed telephone calls without meaningful disclosure of the caller's identity under § 1692d(6).  In turn, Tedeschi similarly argues that there are no issues of material fact and that the alleged conduct satisfies §1692 as a matter of law.  Specifically, Tedeschi claims that KCC violated § 1692d(2) by placing numerous collection calls to him regarding a debt that was not his and stating that KCC had the right to call as much as it wanted to and to do what it wanted to.  He further claims that KCC violated § 1692d(6) when it refused on numerous occasions to identify itself as a caller.

KCC argues that even if one of its representatives had said "we have the right to call you as much as we want," such a statement does not violate § 1692d(2).  The alleged statement does not include obscene or profane language.  However, § 1692d(2) is not limited by its terms to "obscene or profane language" but also includes "language the natural consequence of which is to abuse the hearer."  "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." Jeter v. Credit Bureau, Inc., 760 F.2d. 1168, 1179 (11th Cir. 1985).  A reasonable jury might conclude that a statement by a debt collector that it could call as much as it wished, under circumstances where

the debt collector had placed numerous calls to the person, had the natural consequence of abusing the hearer.

The Court finds that there are genuine disputes as to the number of collection calls made to Tedeschi by KCC and whether a KCC representative ever told Tedeschi that KCC had the right to call as much as it wanted to and to do what it wanted to.  For that reason, both motions for summary judgment are denied as to the § 1692d (2) claim.

KCC contends that only two calls were made to Tedeschi and that the debt collector identified herself to Tedeschi on both occasions.  In turn, Tedeschi alleges that numerous calls were made to him by KCC and that on some of these calls the KCC representative refused to identify herself, although he saw KCC's telephone number on his telephone caller ID.

If a jury were to credit Tedeschi's testimony that he received numerous calls from KCC without meaningful disclosure of the caller's identity, such calls would be violations of § 1692d(6) which prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity."  Because there is a genuine issue of material fact concerning whether calls were made where the caller did not identify herself,  both motions for summary judgment are denied as to the § 1692d (6) claim.

iv. **15 U.S.C. § 1692e**

Tedeschi also claims a violation of § 1692e, which prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt."  Specifically, he claims a

-10-

violation of § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Tedeschi asserts that KCC's statement that it could "call as much as they wanted and do what they wanted" in combination with "an intensive phone campaign of collecting from someone who does not owe the debt, constitutes deceptive means to collect the debt." (Doc. # 32-1, at 17).   In support of that contention, Tedeschi points to Stuart v. A.R. Resources, Inc., in which the court stated that "an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt in violation of 1692e." Stuart v. A.R. Resources, Inc., Civil Action No. 10-3520, 2011 U.S. Dist. LEXIS 27025, at *10 (E.D. Pa. March 16, 2011).  However, the facts here are distinguishable from Stuart.  Tedeschi alleges that KCC contacted him trying to locate Amarilis Cruz or Amarilis Soto.  At no point did KCC assert that Tedeschi was liable for either party's debt or attempt to collect Ms. Cruz's or Ms. Soto's debt from Tedeschi.  Therefore Tedeschi has failed to state a claim under § 1692e(10). Summary judgment in favor of Tedeschi is denied as to his § 1692e(10)  claim and summary judgment in favor of KCC is granted as to the § 1692e(10) claim.

B.      **COUNT TWO- INVASION OF PRIVACY BY INTRUSION UPON SECLUSION.**

KCC argues that the conduct alleged by Tedeschi fails to satisfy the requirements of invasion of privacy by intrusion upon seclusion.  Specifically, KCC argues that a reasonable jury could not find that KCC repeatedly called Tedeschi ""with such persistence and frequency as to amount to a

course of hounding the plaintiff that becomes a substantial burden to his existence.'"  (Doc. # 30-1, at 21) (quoting Restatement (Second) of Torts § 652B & cmt. d (1977)).

In turn, Tedeschi argues that summary judgment should be entered in his favor on the claim of invasion of privacy by intrusion upon seclusion because "KCC intentionally intruded upon his right to privacy by continually harassing [him] with harassing telephone calls which were so persistent and repeated with such frequency as to be considered 'hounding the plaintiff,' and, 'a substantial burden to [his] existence,' thus satisfying the Restatement of Torts, Second, § 652(b) requirement for an invasion of privacy."  (Doc. # 32-1, at 19).

Connecticut recognizes invasion of privacy as a cause of action, drawing upon the Restatement (Second) of Torts to define four distinct types of invasion of privacy:  "(a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 128 (1982) (citing 3 Restatement (Second) of Torts § 652A) . Tedeschi alleges a violation of the first category, unreasonable intrusion upon seclusion, which is defined in the Restatement as "intentionally intrud[ing], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . .  if the intrusion would be highly offensive to a reasonable person."  Restatement (Second) of Torts § 652B (1977).

Comment d to § 652B states that with regard to telephone calls made "to demand payment of a debt," there is no liability for unreasonable intrusion upon the seclusion of another unless "the telephone calls are repeated with such persistence and frequency as to amount to a course of

-12-

hounding the plaintiff, that becomes a substantial burden to his existence . . . ."  The Restatement does not specify a number of calls that would exceed the bounds of reasonableness and constitute a substantial burden to a reasonable person's existence, and "[t]he Connecticut Appellate Courts have yet to interpret what constitutes an invasion of privacy under the first category: an unreasonable intrusion upon the seclusion of another." Gleason v. Smolinski, NNHCV065005107S, 2009 Conn. Super. LEXIS 1982, at *6 (Conn. Super. Ct. July 20, 2009). Other courts have looked at both the number of calls and the time period in which the calls were made to determine if they constituted an invasion of privacy.  Compare Brandt v. I.C. Systems, Inc., Case No: 8:09-cv-126-T-26MAP, 2010 U.S. Dist. LEXIS 14588, at *12-13 (M.D.Fla. Feb. 19, 2010) (101 calls over a two month period could constitute an invasion of privacy); with Oppenheim v. I.C. Systems, Inc., 695 F. Supp. 2d 1303, 1310  (M.D.Fla. 2010) (thirty-five to forty debt collection calls over three months were "annoying and bothersome," but  "did not rise to the requisite level of outrageous and  unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion ").

Tedeschi alleges that KCC placed approximately twenty calls to his residence over a twelve month period.  He does not allege that any of these calls were made at inconvenient times.  He simply alleges that KCC continued to call him despite being told he had no knowledge of the debtor. While twenty calls may well have been annoying and bothersome to Tedeschi, the Court finds that these calls were not "repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence . . . ." Restatement (Second) of Torts § 652B & cmt. d (1977).   Therefore, summary judgment in favor of Tedeschi is

denied and summary judgment is granted in favor of KCC as to the claim of invasion of privacy by intrusion upon seclusion.

C.       **COUNT FOUR- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

KCC argues that the conduct alleged by Tedeschi fails to satisfy the requirements of intentional infliction of emotional distress, because no reasonable fact-finder could conclude that KCC's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and intolerable in a civilized community.

In turn, Tedeschi argues that KCC's conduct satisfies the elements of intentional infliction of emotional distress as a matter of law.  Specifically, he argues that "[n]o reasonable minds could find KCC's conduct anything other than extreme and outrageous." (Doc. # 32-1, at  20). To state a claim for intentional infliction of emotional distress in Connecticut, a plaintiff must show: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253 (1986).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Carrol v. Allstate Insurance Co., 262 Conn. 433, 443 (2003).  "[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in

-14-

social utility." Whelan v. Whelan, 41 Conn. Supp. 519, 522 (1991) (internal quotation marks omitted).

Tedeschi alleges that the following conduct was extreme and outrageous: KCC made numerous collection calls to Tedeschi regarding a debt that was not his, kept dunning Tedeschi in a "persistent and systematic fashion" when it knew Tedeschi was not the debtor, and "made authoritative statements to Tedeschi that KCC had a right to do what they want and call as much as they want." (Doc. # 32-1, at 20-21).

While under certain circumstances a collection agency's conduct might rise to the level of extreme and outrageous conduct, the facts here do not support such a conclusion. Tedeschi alleges approximately twenty calls over a year-long period of time, none of which were made at inconvenient times or to a location other than his home.  At no time did the caller use profanity or abusive language.  At worst, a caller told Tedeschi that she could call as much as she wished.  While such a statement might be rude, it does not rise to the level of exceeding all bounds tolerated by a decent society.  See Conboy v. AT&T Corp., 241 F.3d 242, 258-59 (2d Cir. 2001) (plaintiffs who  "were only harassed with numerous telephone calls from debt collectors" failed to allege facts sufficient to support an intentional infliction of emotional distress claim).  Therefore, Tedeschi fails to prove, as a matter of law, the second element of intentional infliction of emotion distress, i.e., that the conduct was extreme and outrageous. Summary judgment in favor of Tedeschi is denied and summary judgment is granted in KCC's favor as to the claim of intentional infliction of emotional distress.

D.   **TEDESCHI'S REQUEST FOR AN ADVERSE INFERENCE**

In addition to moving for summary judgment, Tedeschi requests an adverse evidentiary inference "because KCC destroyed or possibly altered fact sheets[6] of the debtor's account after it was sued by Tedeschi . . . ." (Doc. # 32-1, at 8).  Tedeschi alleges that KCC knowingly destroyed a fact sheet generated shortly after KCC was served with the complaint in this case and close to twenty other printouts of that fact sheet that it subsequently generated. This contention is based on the deposition testimony of Karl Dudek ("Dudek"), the president of KCC.  At his deposition Dudek produced a fact sheet for the account in question that was printed on December 15, 2010 (the "last fact sheet").  Dudek testified that he first asked for a printout of the fact sheet for this account after learning of the filing of this action[7]. When asked whether the printout produced at his deposition was the exact document he had requested after learning of the lawsuit,  Dudek testified that "[t]his has probably been printed out 20 times," but that to his knowledge no alterations had been made to the December 15, 2010 printout. (Doc. # 32-6, at 36:24)  He also testified that he didn't know "if the first fact sheet [still] exists . . . . " (Id. at 85:20-22).  In a subsequent affidavit, Dudek indicated that KCC had since located the "first" fact sheet, dated June 16, 2010, and that earlier fact sheet was attached to his affidavit. (Doc. # 35-2, at 3, ¶ 8, 4-5).

KCC responds that sanctions are unwarranted because the printed fact sheets at issue were duplicates of each other that show collection activity maintained on a computer system. According to KCC, the original evidence of the collection activity in a particular account is

---

[6]A fact sheet is an activity log maintained by KCC that includes the call history for a collection account.

[7]The complaint in this action was filed on April 21, 2010.

the digital information maintained in the computer system. KCC further contends that the "first" printed version of the fact sheet, i.e., the one generated shortly after service of the complaint, was ultimately located and matches the later printout in regard to all relevant collection activities.

"[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp v. DeGeorge Financial Corp., 306 F.3d 99, 107 (2d Cir. 2002) (internal quotation marks omitted).

Tedeschi argues that the initial complaint served as notice that KCC had a duty to preserve the printed fact sheets.  KCC responds that while it had a duty to preserve the digital information maintained on its computer system, it did not have a duty to preserve printouts from that system, since the printouts merely duplicate the  "original evidence," i.e., "the digital information maintained by the computer system." (Doc. # 35 at 4). The Court finds that KCC did not have a duty to preserve printouts from its computer system so long as the electronic files themselves were preserved.  While courts have imposed sanctions for spoliation of digital files, such sanctions have arisen from destruction of the electronic systems directly and not from destruction of printouts from those systems.  See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("A party . . . must retain all relevant documents[,] but not multiple identical copies [,] in existence at the time the

duty to preserve attaches, and any relevant documents created thereafter."). Here, there is no claim that KCC destroyed the electronic files related to the debt collection activities relevant to this case. The Court concludes that KCC did not destroy evidence relevant to Tedeschi's claims. Accordingly, Tedeschi's request for an adverse inference is denied.

## IV. CONCLUSION

For the foregoing reasons, KCC's motion for summary judgment **(dkt. # 30)** is **GRANTED IN PART** and **DENIED IN PART** and Tedeschi's cross motion for summary judgment and sanctions **(dkt. # 33)** is **DENIED**. The court hereby orders the following: (1) With regard to the First Count, KCC's motion for summary judgment is GRANTED for claims under 15 US.C. §§ 1692e and 1692g and DENIED for claims under 15 U.S.C. § 1692d; (2) With regard to the Second Count, invasion of privacy by intrusion upon seclusion, KCC's motion for summary judgment is GRANTED; (3) With regard to the Fourth Count, intentional infliction of emotional distress, KCC's motion for summary judgment is GRANTED; and (5) With regard to all counts, Tedeschi's cross motion for summary judgment and sanctions is DENIED.

This case shall proceed as to the following claims: Count One, 15 U.S.C. § 1692d (2) ("[t]he use [by a debt collector] of obscene or profane language or language the natural consequence of which is to abuse the hearer ") and 15 U.S.C. § 1692d (6) ("the placement of telephone calls [by a debt

collector] without meaningful disclosure of the caller's identity").

SO ORDERED this   15th     day of April, 2014.

_____/s/ DJS_____

DOMINIC J. SQUATRITO

UNITED STATES DISTRICT JUDGE